# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| SILICON VALLEY CLEAN ENERGY AND CENTRAL COAST COMMUNITY ENERGY, <br><br> Plaintiffs, <br><br> vs. <br><br> ORIGIS USA LLC; SAN LUIS WEST SOLAR LLC; and DOES 1 through 10, inclusive, <br><br> Defendants. | CASE NO. 4:25-CV-09319-HSG <br><br> **STIPULATION AND ORDER REGARDING ELECTRONICALLY STORED INFORMATION** |

This Stipulation and Order Regarding Electronically Stored Information ("ESI") will govern how Plaintiffs Silicon Valley Clean Energy and Central Coast Community Energy and Defendants Origis USA LLC and San Luis West Solar, LLC (the "Parties") manage electronic discovery and the production of hard copy documents in the above captioned case, unless the Parties agree in writing to change them or they are changed by the Court.

The Parties agree that in responding to a document request pursuant to Fed. R. Civ. P. 34, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

Nothing in this ESI Protocol shall supersede the Parties' obligations and protections under the Federal Rules of Civil Procedure and applicable decisional authority.

## I.    DEFINITIONS

**"Action"** means the above-captioned litigation.

**"Documents"** shall have the same definition as set forth in Federal Rules of Civil Procedure 26 and 34.

**"Document Family"** refers to a group of related ESI that includes parent and child documents as maintained in the ordinary course of business (e.g, a parent email and many attachments thereto).

**"Electronically stored information"** or **"ESI"** means, as referenced in the Federal Rules of Civil Procedure, information that is stored electronically, regardless of the media or whether it is in the original format in which it was created, as opposed to stored, in hard copy (e.g., on paper).

**"Hard Copy Document"** means a document collected from physical files (paper) and not from electronic sources.

**"Metadata"** is used to describe the structural information of a file that contains data about the file, as opposed to describing the content of a file. The Metadata fields to be produced are listed in **Exhibit 1.**

**"Native," "Native Format,"** or **"Native Data Format"** means and refers to the format of ESI in the application in which it was originally created and/or as used by the Producing Party in the usual course of its business and in its regularly conducted activities.

**"OCR text"** means text generated through Optical Character Recognition Process of image/bitmap picture representation of the documents.

**"Producing Party"** means or refers to any Party from which production of ESI or Hard Copy Documents are sought.

**"Requesting Party"** means or refers to any Party seeking production of ESI or Hard Copy Documents.

**"Structured Data"** means data that resides in a fixed field within a record or file, or stored in a structured format, such as databases (e.g., Oracle, SQL, Access, etc.) or data sets, according to specific form and content rules as defined by each field of the database.

II.   **PRESERVATION**

1.   **Management of Discoverable Information During Litigation**

The Parties may take any of the following actions with respect to discoverable information without breaching their duty to preserve:

- Move unfiled documents or ESI into files or folders, including newly created files or folders, which adhere to an organizational scheme that was created before the Complaint was filed in this Action. Nothing in this paragraph prevents the Parties from implementing an

STIPULATION AND ORDER RE: ESI                    3                    CASE NO. 4:25-CV-09319-HSG

organizational scheme that applies only to documents or ESI created after the Complaint was filed in this matter.

- Delete, erase, or overwrite relevant ESI from hardware or devices that are being replaced, upgraded, reimaged, disposed of, or returned at the end of lease, provided that the relevant ESI is first copied to a new location in a manner that preserves the data, including metadata, which must be produced under this Protocol and its appendices.

- Move relevant data from one piece of hardware or device to another, or from one location to another, provided that a copy of the relevant ESI remains accessible in the first location or the new copy is created in a manner that preserves the data, including metadata, which must be produced under this Protocol and its appendices.

- Load loose relevant ESI into an enterprise content management system, provided that: (1) the enterprise content management system captures all of the metadata fields that must be produced under this Protocol (and its appendices) and does not convert the format of the ESI in a way that makes it significantly less accessible; or (2) the Parties maintain a copy of the relevant ESI in its native format and make their production from this native file collection.

- Upgrade, patch, reprogram, or customize software that stores relevant ESI, even if such actions alter the way data is maintained, stored, or viewed, provided that the relevant data itself is not altered.

- Input additional data to a database, access data in a database, update the software running a database, append new data to a database, or modify existing data in a database. These actions can be taken only to the extent they are part of the routine use of the database at issue.

- Add, edit, or take down any data on a publicly accessible internet site or social media site.

- Add data to an intranet or private website; or edit or take down data on an intranet or private website, provided that a copy of the data is made before the change and is preserved for discovery.

- Compress, decompress, encrypt, or decrypt data subject to preservation in this Action, provided that any data losses during such processes do not result in loss of the metadata

STIPULATION AND                        4                  CASE NO. 4:25-CV-09319-HSG
ORDER RE: ESI

required to be produced under this Protocol (and its appendices) or significantly degrade the quality of the data.

## III. IDENTIFICATION OF RESPONSIVE DOCUMENTS

The Parties shall meet and confer in an effort to conduct discovery in the most efficient and effective manner. Specifically, the Parties will attempt in good faith to come to an agreement regarding search and culling methods used to identify responsive information, and regarding any proposed limitations on the scope of discovery, including custodians, custodial and non-custodial sources, date ranges, file types, or any additional proposed method to cull documents for review (i.e., search terms, technology-assisted-review, predictive coding).

The Parties agree that the grounds for objections should be supported by specific information. The Parties shall make good faith efforts to comply with and resolve any differences concerning compliance with this ESI Protocol. If a Producing Party cannot comply with any material aspect of this ESI Protocol or if compliance would be impossible or unreasonable, such Party shall inform the Requesting Party in writing a reasonable time before the date of production. The Parties will not seek Court intervention without first attempting to resolve any disagreements in good faith, based upon all reasonably available information.

### 1. Easily Segregable Documents

Documents or categories of documents that are easily identifiable and segregable shall be collected without the use of search terms or other agreed upon advanced search methodology (e.g., analytics, predictive coding, technology-assisted-review). Where potentially responsive ESI shall be searched through the use of search terms, the Parties agree to follow the process identified below and shall meet and confer regarding any proposed deviation.

### 2. Search Terms

Where the Parties agree that potentially responsive ESI shall be searched through the use of search terms, the Parties shall meet and confer in good faith regarding search terms and custodians to be searched. The Parties will meet and confer in good faith regarding the process for fulfilling document production obligations. As part of the meet and confer process, when requested, Parties must serve hit reports (at the search phrase and search term level) for proposed search terms.

STIPULATION AND ORDER RE: ESI

CASE NO. 4:25-CV-09319-HSG

If disputed terms still exist at the end of the meet and confer process, the Parties will submit those terms to the Court in the form of a joint discovery letter with a discussion of the relevance and/or burden associated with those search terms.

### 3.    Technology-Assisted-Review ("TAR")

To the extent a Party chooses to use a methodology for culling in addition to search terms (including, for instance, predictive coding), that Party shall disclose its intent to use that methodology and the name of the tool(s) used to support the methodology. A producing Party using TAR shall endeavor to identify sufficient documents from the TAR review set to reach an estimated 75% recall (75% of all responsive documents in the TAR review are found). Recall shall be calculated from (1) responsive documents coded during review ("Responsive Documents") and (2) estimated unreviewed responsive documents. The procedure for calculating recall will be as follows: A sample size shall be drawn from the unreviewed population. This sample shall be reviewed and the number of documents coded responsive shall be used to estimate—at a 95% confidence level with a margin of error no greater than 5%—how many responsive documents remain in the unreviewed population. A recall estimate shall then be calculated by dividing the number of Responsive Documents by the sum of the upper bound of the margin of error of responsive documents estimated to remain unreviewed and the number of Responsive Documents. If this figure meets or exceeds 75%, review may cease.

To the extent that a producing Party determines that reaching the 75% recall target will be unduly burdensome under proportionality considerations, the Parties shall meet and confer to determine whether a lower target is appropriate. However, the Party need not disclose the details of said methodology (such as granular code, queries, or specific validation processes) unless otherwise agreed upon or ordered by the Court for good cause shown. The Parties will meet and confer regarding any TAR questions that arise.

### 4.    Responsive Documents

The fact that a document may have been retrieved by application of search terms or TAR does not render it responsive and shall not prevent a Producing Party from withholding from production such document if non-responsive and/or permissible under the Federal Rules of Civil

Procedure. To the extent any Party identifies responsive ESI or documents not hit upon by the search terms or the TAR methodology noted above, all such non-privileged documents should be produced.

## IV.    PRODUCTION OF RESPONSIVE DOCUMENTS

### 1.    Hard Copy Format

Hard Copy Documents should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (i.e., .dat). The database load file should contain the following fields: "BEGNO," "ENDNO," "BEGATTACH," "ENDATTACH," "CONFIDENTIALITY," "REDACTED," and "CUSTODIAN." The documents should be logically unitized (i.e., distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records) and be produced in the order in which they are kept in the usual course of business.  TIFFs shall be produced as black & white, single-paged TIFF images in accordance with the technical specifications set out in Appendix A, unless agreed with the opposing party or ordered by a court.  Upon written request that identifies a reasonable number of individual documents at issue by Bates number, a party shall produce color images for those documents.  Documents produced in color shall be produced as single-page, 300 DPI, color JPG images with the quality setting of 75% or higher.   The Parties shall provide document level OCR text files to accompany the TIFF format production of Hard Copy Documents.

### 2.    ESI Format

The Parties will produce ESI in single-page, black and white, TIFF Group IV, 300 DPI TIFF images with the exception of spreadsheet type files (e.g., Excel files), source code, audio, and video files, which shall be produced in Native Format, except where such files are redacted pursuant to the terms of this Protocol. No Party may request or seek to compel the production of ESI in native format on a wholesale or categorical basis; however, the Parties shall comply with reasonable requests by the other for the native production of specifically-identified documents, other than those of the filetypes in the foregoing sentence.

TIFFs shall be produced as black & white, single-paged TIFF images in accordance with the technical specifications set out in Appendix A, unless agreed with the opposing party or ordered by a court.  Upon written request that identifies a reasonable number of individual documents at issue

STIPULATION AND                                   7                        CASE NO. 4:25-CV-09319-HSG
ORDER RE: ESI

by Bates number, a party shall produce color images for those documents. Documents produced in color shall be produced as single-page, 300 DPI, color JPG images with the quality setting of 75% or higher. Parties are under no obligation to enhance an image beyond how it was kept in the usual course of business. TIFFs/JPGs will show any and all text and images which would be visible to the reader using the native software that created the document. For example, TIFFs/JPGs of email messages should include the BCC line. PowerPoint documents shall be processed with hidden slides and all speaker notes unhidden, and shall be processed to show the slide, any comments, and the speaker's notes on the TIFF/JPG image. Word documents shall be processed to show all tracked changes on the TIFF/JPG image.

If a document is produced in native, a single-page Bates stamped image slip sheet stating the document has been produced in Native Format will also be provided and noting any corresponding confidentiality designation. Each native file should be named according to the Bates number it has been assigned and should be linked directly to its corresponding record in the load file using the NATIVELINK field. There shall be no Bates numbering of native files at the page level. To the extent that either Party believes that specific documents or classes of documents, not already identified within this Protocol, should be produced in Native Format, the Parties agree to meet and confer in good faith.

### 3. **Confidentiality of Produced ESI**

Documents and ESI shall be produced pursuant to the terms of the Protective Order entered in this Action. Any objections to production shall otherwise be made pursuant to the Local Rules, the Federal Rules of Civil Procedure, or the Federal Rules of Evidence. If the Producing Party is producing ESI in TIFF Format subject to a claim that it is protected from disclosure under the Protective Order, or other Order issued in this matter, the document shall be stamped electronically on each page in accordance with the applicable Order.

If the Producing Party is producing ESI in Native Format subject to a claim that it is protected from disclosure under the Protective Order, or other order issued in this matter, then the designation shall be included in a separate field in the .dat load file, as well as the TIFF placeholder or, where not produced with a TIFF placeholder, the storage device (e.g., CD, USB, or hard drive) containing

such native ESI data shall be labeled in accordance with the applicable order.

**4.      Production of Redacted Documents/Information**

To the extent that a responsive document is redacted, consistent with the Protective Order governing this case, any redactions shall be clearly indicated on each page of the document from which information is redacted, bearing a designation that it has been redacted. The designation shall make clear the reason for the redaction (e.g., "Redacted - Privileged," "Personal Information"). Where a document contains both privileged and non-privileged responsive content, the Producing Party shall redact the privileged material and produce the remainder of the document.

Native Excel or other spreadsheet files that are redacted may be produced in TIFF format or in Native Format by overwriting the data contained in a particular cell, row, column or tab with the word "Redacted," and shall make clear the reason for the redaction (e.g., "Redacted Privilege"), provided that such overwriting does not impact any other, nonredacted cells or information in the spreadsheet (e.g., if a cell redacted for privilege contains a numerical value that is used in a formula by other, non-redacted cells in the spreadsheet). If a redaction does impact non-redacted cells/information, the Parties shall promptly meet and confer to resolve the issue. In the alternative, redactions may be applied to Native Excel or other spreadsheet files using an automated redaction tool. The Parties acknowledge that redacting the native may alter the metadata of the produced file; however, the metadata produced pursuant to Exhibit 1 will be the metadata extracted from the original native file, other than metadata containing redacted information.

Any native Excels, other spreadsheet files, or PowerPoint or other presentation files that are redacted may be produced as black-and-white or color (as applicable), single-page TIFF files with OCR text provided in document level text files, with load files pursuant to Exhibit 2, which shall include all information contained in the original file, including, but not limited to, speaker notes and "hidden" information and/or slides, with any redaction clearly delineated. If the file contains external video or audio components, the video or audio will be produced as native files unless redacted.

All Parties reserve their rights to challenge the appropriateness of any redactions and the discoverability of the redacted information. The Parties will meet and confer regarding any disputes

STIPULATION AND                              9                    CASE NO. 4:25-CV-09319-HSG
ORDER RE: ESI

related to any redaction and will not unreasonably deny good-faith requests for production of redacted information. Nothing contained herein shall be used to demonstrate that any document or group of documents, or any portion of any document or group of documents, is or is not properly discoverable in the event that a Party moves for production thereof.

### 5.   De-Duplication of ESI

Each Party shall use reasonable efforts to remove exact duplicate documents based on MD5 or SHA-1 hash values, at the family level. Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates. Parties agree that an email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical.  Removal of near-duplicate documents is not acceptable. De-duplication will be done across the entire collection (global de-duplication); and the ALLCUSTODIANS field will list each custodian, separated by a semi-colon, who was a source of that document and the FILEPATH field will list each file path, separated by a semi-colon, that was a source of that document. If during the course of its review, the Producing Party identifies a large number of duplicate documents, the Parties may confer regarding a custom deduplication protocol.

### 6.   Email Threading

In order to reduce the volume of entirely duplicative content within email threads, the Parties may utilize commercially available "email thread suppression" tools. However, the Parties must produce lesser-included emails contained in those same threads if those lesser-included emails include attachments that are not contained in the most complete versions of those emails. To the extent a Producing Party utilizes "email thread suppression tools," the Parties will promptly meet and confer regarding any requests for the production of lesser-included emails and will not unreasonably deny good faith requests for de-threading of particular email threads. This clause is not to be construed to require the Producing Party to produce metadata for lesser included emails that would not otherwise be produced but for the use of email thread suppression tools. The Parties will meet and confer regarding the production of metadata sought for particular lesser included emails.

**7.   Hyperlinked Files**

A hyperlinked file is not part of the same document family as the document containing the hyperlink, and a Producing Party need not produce the hyperlinked file as such. However, upon a reasonable request, a Producing Party will produce or identify such files to the extent it can locate them using reasonable efforts, provided that such documents are relevant and not otherwise protected from production, including by attorney-client privilege or the work product doctrine.

**8.   Metadata**

All ESI will be produced with a delimited, database load file that contains the metadata fields listed in Exhibit 1, attached hereto. The metadata produced should have the correct encoding to enable preservation of the documents' original language. Each Bates number assigned to produced ESI will: (i) be unique across the entire document production; (ii) maintain a constant length across the entire production (i.e., ABC00000001—with no space between the prefix and the number, padded to the same number of characters); (iii) contain no special characters; and (iv) be sequential within a given document. If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production.

**9.   Family Relationships**

For ESI, Document Families must be preserved by assigning sequential Bates numbers to all files within a parent-child group and by providing accurate attachment ranges for those files in the metadata fields required. Attachments to emails or substantive embedded files will not be eliminated from the parent email/document. Rather, parent-child relationships (the association between an attachment and its parent document or between embedded documents and their parent) will be preserved. Substantive embedded documents (e.g., a spreadsheet embedded within a word processing document) will be extracted, produced as independent document records (either in full, redacted, or via a privilege slipsheet) and related back to the respective top-level parent document via the Beginning Attachment Bates Number and Ending Attachment Bates Number. The Parties agree that fully non-responsive attachments to responsive parent documents must be produced. Additionally, non-responsive parent documents must be produced if they contain any responsive attachments.

Where an electronic document that is part of a family is withheld, and its relationship to the rest of that Document Family is indicated using slipsheets, the Producing Party shall provide one Bates-numbered slipsheet for each withheld document.

If a member of an ESI Document Family that has otherwise been determined to be responsive cannot technically be processed (e.g., unsupported file format, file corruption, inaccessible password-protected document), those technical problems shall be identified and disclosed to the Requesting Party by production of a Bates-labeled slipsheet that states "Technical issue—file cannot be processed." A Requesting Party may thereafter raise with the Producing Party any questions or concerns.

**10.    Embedded Objects**

The Parties agree that the Producing Party is not required to review or produce non-unique and non-substantive embedded objects as separate documents. Substantive embedded objects shall be produced. The Parties agree to meet and confer in good faith to attempt to resolve any dispute arising under this provision.

**11.    Compressed File Types**

Compressed file types (e.g., .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level document or file is extracted.

**12.    Attorney-Client Privilege and Work Product**

The Parties agree that, for any documents withheld from production on the basis of an assertion of the attorney-client privilege or work product protection, the withholding Party shall provide the other Party with a log as required by the Federal Rules of Civil Procedure. All Parties will produce privilege logs within 60 days after each document production. A Party's privilege log must provide objective metadata (to the extent it is reasonably available and does not reflect privileged or protected information), an indication of the privilege or protection being asserted, and a description, pursuant to Fed. R. Civ. P. 26(b)(5)(A)(ii), of the nature of the withheld document that, without revealing privileged or protected information, enables other Parties to assess the claim of privilege or other protection from disclosure.

The log will be produced in Excel or CSV format and will be populated with the following extracted metadata fields, to the extent providing this information will not destroy privilege: Beginning Bates Number / Privilege Identifier, Unique Family Identifier, Custodian, From, To, CC, BCC, Subject, Author, File Name, File Extension, Date Sent, Date Created, Date Last Modified. In-house attorney names shall be designated with a caret (^); outside counsel names will be designated with a double caret (^^). An email thread may be logged as a single entry with the extracted metadata fields for the last-in-time email in the thread.

No Party is required to list on a privilege log any documents or communications exclusively between a Party and its outside counsel in this Action (and no other third parties), where such documents or communications pertain to this litigation. Documents or communications between a Party and its outside counsel in this Action that relate to other issues or disputes must be listed in the privilege log.

If a Producing Party redacts portions of the discoverable information for privilege, the Producing Party does not need to provide a log entry where the face of the redacted discoverable information provides the information that otherwise would appear on a log. Redacted documents need not be logged as long as (a) for emails, the bibliographic information (i.e., To, From, CC, BCC, Subject, Date/Time) is not redacted, and the reason for the redaction is noted on the face of the document in the redaction box; and (b) for non-email documents, the reason for the redaction is noted on the face of the document in the redaction box.

Pursuant to the Protective Order, Federal Rule of Evidence 502(d) and Federal Rule of Civil Procedure 26(b)(5)(B), the production or disclosure of any discovery material that a Party (the "Disclosing Party") thereafter claims should not have been produced or disclosed based on privilege or work product protections ("Disclosed Information"), shall not constitute or be deemed a waiver or forfeiture in whole or in part—in this or any other action—of any claim of attorney-client privilege or work product immunity that the Disclosing Party would otherwise be entitled to assert with respect to the Disclosed Information and its subject matter.

### 13. **Structured Data**

To the extent a response to discovery requires production of responsive Structured Data, in advance of producing such Structured Data, the Parties agree to meet and confer regarding the content and format of the production, including discussion of the most appropriate data extraction and cost-effective production format. The Producing Party shall, in good faith, make disclosures necessary to ensure the meet and confer discussions are meaningful.

### 14. **Production Media**

Documents shall be produced via secure FTP site or similar electronic secure file transfer system or on such other readily accessible computer or electronic media as the Parties may hereafter agree upon (the "Production Media"). Each piece of Production Media shall include a unique identifying label and cover letter including the following information:

Name of the litigation and its case number;

Name of the Producing Party;

Date of the production (mm/dd/yyyy);

Bates number range; and

Confidentiality Designation, if any.

Any replacement Production Media or documents shall cross-reference the original Production Media, clearly identify that it is a replacement, and cross-reference the Bates number range that is being replaced.

Producing Parties must encrypt their Production Media and, if so, shall provide a key or password to decrypt the Production Media in a separate communication.

### 15. **Objections to ESI Production**

If any formatting requirements or other specifications agreed to in this ESI Protocol are later determined by the Producing Party to be not feasible, or unduly burdensome or unreasonably costly, the Party, during the meet-and-confer process, shall: (i) describe the nature of the objection with reasonable particularity; (ii) provide the Requesting Party with the basis for declining to produce such ESI; and (iii) indicate whether the Producing Party is willing to offer an alternative. The Parties shall negotiate in good faith concerning the production of any such ESI.

STIPULATION AND                                14                    CASE NO. 4:25-CV-09319-HSG
ORDER RE: ESI

**16.    Costs**

Unless otherwise ordered or agreed, the costs of producing documents and ESI pursuant to this Order shall be borne by each Producing Party. However, nothing in this Order is meant to waive, limit, reduce, or increase the rights and/or obligations of any Party to seek reimbursement for costs associated with collection, review, and/or production of documents or ESI in accordance with applicable laws and procedures.

DATED: March 26, 2026                          Respectfully submitted,
                                               HUESTON HENNIGAN LLP


                                               By:*/s/Vicki Chou* _____
                                                   John C. Hueston
                                                   Vicki Chou
                                                   Warren Crandall
                                                   Chloé P. Sweeney-Rowan
                                               *Attorneys for Plaintiffs Central Coast*
                                               *Community Energy and Silicon Valley Clean*
                                               *Energy*


DATED: March 26, 2026                          Respectfully submitted,
                                               KIRKLAND & ELLIS LLP


                                               By:*/s/Mark McKane*_____
                                                   Mark McKane, P.C.
                                                   Christopher W. Keegan, P.C.
                                               *Attorneys for Defendants Origis USA LLC*
                                               *and San Luis West Solar, LLC*


**PURSUANT TO STIPULATION, IT IS SO ORDERED.**


DATED: 4/3/2026                    _Haywood S. Gilliam, Jr._

                                   Hon.  Haywood S. Gilliam, Jr

STIPULATION AND                    15                    CASE NO. 4:25-CV-09319-HSG
ORDER RE: ESI

## EXHIBIT 1

## FIELDS and METADATA TO BE PRODUCED

1. **Hard Copy Documents.** The load files accompanying scanned Hard Copy Documents will include the following objective coding fields, to the extent applicable:

| Field | Field Description |
|---|---|
| **CUSTODIAN** | The custodian of the document even if de-duplicated prior to production or location of item |
| **BEGNO** | First Bates identifier of item |
| **ENDNO** | Last Bates identifier of item |
| **BEGATTACH** | Starting Bates number of a Document Family |
| **ENDATTACH** | Ending Bates number of a Document Family |
| **CONFIDENTIALITY** | Confidentiality designation pursuant to the governing protective order |
| **REDACTED** | If a document contains a redaction, this field will display 'YES'. |

2. **Metadata Fields.** The following metadata fields shall be included in Load files accompanying ESI, to the extent available, and the ESI they are related to is unredacted and not privileged:

| Field | Example/Format | Description |
|---|---|---|
| **BEGNO** | ABC0000001 (Unique ID) | The Document ID number associated with the first page of a document. |
| **ENDNO** | ABC0000003 (Unique ID) | The Document ID number associated with the last page of a document. |
| **BEGATTACH** | ABC0000001 (Unique ID Parent-Child Relationships) | The Document ID number associated with the first page of the parent document. |
| **ENDATTACH** | ABC0000008 (Unique ID Parent-Child Relationships) | The Document associated with the last page of the last attachment. |
| **ATTACHMENT COUNT** | 1 | Number of attachments |

STIPULATION AND ORDER RE: ESI

1

Case No. 4:25-CV-09319-HSG

| PAGE COUNT | 1 | Total number of pages in document |
|---|---|---|
| SENTDATETIME | MM/DD/YYYY hh:mm:ss | The date and time the e-mail or calendar entry was sent. |
| RECEIVEDDATETIME | MM/DD/YYYY hh:mm:ss | The date and time the document was received. |
| LASTMODDATETIME | MM/DD/YYYY hh:mm:ss | The date and time the document was last modified. |
| CREATEDDATETIME | MM/DD/YYYY hh:mm:ss | The date and time the document was created. |
| FILEPATH | /JsmithPC/Users/Jsmith/Desktop | The file path from the location in which the document was stored in the usual course of business. This field should be populated for both e-mail and e-files. |
| AUTHOR | jsmith | The author of a document from extracted metadata. |
| FROM | Joe Smith <jsmith@email.com> | The display name and e-mail address of the author of an e-mail/calendar item. An e-mail address should always be provided. |
| TO | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail address of the recipient(s) of an e-mail/calendar item. An e-mail address should always be provided for every e-mail if a recipient existed. |
| CC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the copyee(s) of an e-mail/calendar item. An e-mail address should always be provided for every e-mail if a copyee existed. |
| BCC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the blind copyee(s) of an e-mail or calendar item. An e-mail address should always be provided for every e-mail if a blind copyee existed. |
| SUBJECT | | The subject line of the e-mail/calendar item. |
| TITLE | | The extracted document title of a document. |
| ALLCUSTODIAN | Smith, Joe; Doe, Jane | All of the custodians of a document from which the |

| | | |
|---|---|---|
| | | document originated, separated by semicolons. |
| **CUSTODIAN** | Smith, Joe | The name of the custodian or repository name of the document produced. |
| **SOURCE** | Computer, Mobile Phone, Email, Network Share. Database Name. etc. | The source from which the document was collected. |
| **PAGES** | | The number of pages in a document. |
| **FILEEXT** | XLS | The file extension of a document. |
| **FILENAME** | Document Name.xls | The file name of a document. |
| **FILESIZE** | Numeric | The file size of a document (including embedded attachments). |
| **HASH** | | The MD5 or SHA-1 Hash value or "de-duplication key" assigned to a document. The same hash method (MD5 or SHA-1) should be used throughout production. |
| **CONVERSATION INDEX** | | ID used to tie together e-mail threads. |
| **CONFIDENTIALITY** | Confidential | The confidentiality designation pursuant to the governing protective order. |
| **REDACTED** | YES or Blank | If a document contains a redaction, this field will display 'YES'. |
| **VOLUME** | VOL001 | The production volume name. |
| **NATIVELINK** | D:\NATIVES\ABC000001.xls | The full path to a native conv of a document. |
| **FULLTEXT** | D:\TEXT\ABC000001 .txt | The path to the full extracted text of the document. There should be a folder on the deliverable, containing a separate text file per document. These text files should be named with their corresponding bates numbers. **Note**: E-mails should include header information: author, recipient, cc, bcc, date, subject, etc. If the attachment or e-file does not extract anv text, then OCR for |

STIPULATION AND
ORDER RE: ESI

3

CASE NO. 4:25-CV-09319-HSG

| | | the document should be provided. |
|---|---|---|

Such metadata field values will be extracted from the Native file and will be produced to the extent available at the time of collection and processing, except that they may be redacted if privileged or if the metadata field values contain information protected by law or subject to an order of this Court. This list of fields does not create any obligation to create or manually code fields that are not automatically generated by the processing of ESI, that do not exist as part of the original metadata of the document, or that would be burdensome or costly to obtain.

If necessary, the Parties shall meet and confer to determine the metadata for text messages, collaboration system messages (e.g., Chatter) and social media messages.

STIPULATION AND
ORDER RE: ESI                                          4            CASE NO. 4:25-CV-09319-HSG

**EXHIBIT 2**

**REQUESTED LOAD FILE FORMAT FOR ESI**

1.       **Delimited Text File.** A delimited text file (.DAT File) containing the fields listed in **Exhibit 1** should be provided. There must be one row in this load file for every document in the deliverable; and the file must terminate with a carriage return. The delimiters for the file should be Concordance defaults:

- Comma - ASCII character 20 (¶)
- Quote - ASCII character 254 (Þ)
- Newline - ASCII character 174 (®)

2.       **Image Cross-Reference File (.opt).** The Opticon cross-reference file is a comma delimited file consisting of six fields per line. There must be a line in the cross-reference file for every image in the database. The format for the file is as follows:

ImageID,Volume,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,Pages.

| | |
|---|---|
| ImageID: | The unique designation that Concordance and Opticon use to identify an image. This should be the BegNo Number of the Document. |
| Volume: | The name of the volume. |
| ImageFilePath: | The full path to the image file. |
| DocumentBreak: | If this field contains the letter "Y," then this is the first page of a Document. If this field is blank, then this page is not the first page of a Document. |
| FolderBreak: | Leave empty. |
| BoxBreak: | Leave empty. |
| Pages: | Number of pages in the Document. |

3.       **Sample Data.**

PROD00000001,VOL001,E:\100\ PROD00000001.TIF, Y,,2

PROD00000002, VOL001,E:\100\ PROD00000002.TIF,,,,

STIPULATION AND
ORDER RE: ESI                                                    5            CASE NO. 4:25-CV-09319-HSG

PROD00000003, VOL001,E:\100\ PROD00000003.TIF,Y,,,4

PROD00000004, VOL001,E:\100\ PROD00000004.TIF,,,,

PROD00000005, VOL001,E:\100\ PROD00000005.TIF,,,,

PROD00000006, VOL001,E:\100\ PROD00000006.TIF,,,,