United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SILICON VALLEY CLEAN ENERGY, et al.,

Plaintiffs,

v.

ORIGIS USA LLC, et al.,

Defendants.

Case No. 25-cv-09319-HSG

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND GRANTING IN PART AND DENYING IN PART MOTIONS TO SEAL**

Re: Dkt. Nos. 7, 25, 26

Pending before the Court is Defendants' motion to dismiss. *See* Dkt. No. 26-3 ("Mot."); Dkt. No. 34 ("Opp."); Dkt. No. 36 ("Reply"). The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss. The Court also **GRANTS IN PART** and **DENIES IN PART** Defendants' motions to seal, Dkt. Nos. 7, 26.

## I. BACKGROUND

Plaintiffs Silicon Valley Clean Energy ("SVCE") and Central Coast Community Energy ("3CE") filed this lawsuit against Defendants Origis USA LLC ("Origis") and its wholly-owned subsidiary San Luis West Solar LLC ("SLW") in October 2025 in San Francisco County Superior Court. *See* Dkt. No. 1-1 ("Compl.") ¶¶ 2, 15. Defendants removed later that month. Dkt. No. 1.

Plaintiffs are "two local public agencies established as Community Choice Aggregators ("CCAs") whose purpose is to facilitate their respective communities' transition to clean renewable energy." Compl. ¶ 1. They allege that they entered into power purchase agreements ("PPAs") with Origis subsidiary SLW "to build a solar generation and storage facility and sell power from that facility to the CCAs at a fixed price." *Id.* ¶ 2.

United States District Court
Northern District of California

But "[l]ittle more than a year after agreeing to the original PPAs'. . . terms, Origis and SLW [allegedly] began executing on a scheme to extort higher prices from" Plaintiffs. *Id.* "Origis demanded more time and money to complete the project, claiming it was no longer feasible to do so under the current contracts." *Id.* While Plaintiffs "did not want to pay more for their project and certainly would never have agreed to modified conditions had they known that Defendants would only use it as a starting point for the next round of negations, . . . Origis [allegedly] falsely promised that higher prices and a delayed schedule would address the market conditions, permitting problems, and other issues Origis claimed were impacting the project and ensure completion under the new terms of the contract." *Id.* ¶ 4. As a result, Plaintiffs agreed to amend the PPAs and sign related settlement agreements in November 2023. *Id.* ¶¶ 6, 61.

Plaintiffs claim that "[u]nbeknownst to the CCAs at the time, Origis never intended to deliver on its promises." *Id.* ¶ 5. And one year later, Origis allegedly "began complaining about the same delays and changed economic conditions as before" and "held the project hostage by ensuring that SLW would breach the Amended PPAs[,] . . . including by missing the deadline to start construction, refusing to issue a plan for remedying that missed deadline, refusing to make payments it owes, and stonewalling requests for information to which the CCAs are contractually entitled." *Id.* ¶¶ 7–8.

Plaintiffs now bring claims for breach of contract, intentional interference with contractual relations, promissory estoppel, intentional misrepresentation, negligent misrepresentation, breach of implied covenant of good faith and fair dealing, and violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et. seq*. *Id.* ¶¶ 99–150. The breach of contract and breach of implied covenant claims are brought as to SLW and Origis as SLW's alter ego; the UCL claim is brought as to both SLW and Origis; all other claims are brought as to Origis only.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be

granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nevertheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quotation omitted).

Even if the court concludes that a 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

## III. MOTION TO DISMISS

Defendants argue that Plaintiffs (1) have not adequately pleaded that Defendant Origis acted as Defendant SLW's alter ego; (2) have not satisfied the Rule 9(b) particularity standard for their claims sounding in fraud; and (3) failed to adequately plead concrete promises, reliance, and a relevant connection to damages. Mot. at 9–10.[1]

[1] The Court **GRANTS** Defendants' request for judicial notice of the four PPAs and two related settlement agreements because these documents are incorporated by reference in the complaint. *See* Dkt. No. 27. Plaintiffs do not object to this request, these documents are specifically referenced in Plaintiffs' complaint and are central to their claims, and their authenticity is not in question. *See* Compl. ¶¶ 6, 61–63, 80, 100, 102, 110, 132; *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (explaining that a "defendant may seek to incorporate a document into the complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim" (quotation omitted)). However, these documents are not relevant to the Court's conclusions in this order.

**A. Alter Ego Theory (Counts 1 and 6)**

Plaintiffs bring claims for breach of contract and breach of the implied covenant of good faith and fair dealing against Origis as SLW's alter ego, arguing that "Origis leveraged the SLW shell entity as a tool enabling Origis to threaten to abandon the SLW project without fear of direct liability for its misconduct." Compl. ¶ 102. Defendants seek dismissal of these claims against Origis, arguing that Plaintiffs have not adequately alleged that Origis should be treated as SLW's alter ego. Mot. at 15–19.

A parent company is not automatically liable for the acts of its subsidiaries. *See United States v. Bestfoods*, 524 U.S. 51, 68–69 (1998) (noting that "corporate personalities" generally "remain distinct"); *see also Laird v. Cap. Cities/ABC, Inc.*, 68 Cal. App. 4th 727, 737 ("Corporate entities are presumed to have a separate existence, and the corporate form will be disregarded only when the ends of justice require this result.").[2] As the Ninth Circuit has cautioned, "[t]he mere fact of sole ownership and control does not eviscerate the separate corporate identity that is the foundation of corporate law." *Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004).

To determine whether a plaintiff has adequately pled alter ego liability, "courts start from the premise that alter ego is a limited doctrine, invoked only when recognition of the corporate form would work an injustice." *Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 960 (N.D. Cal. 2015) (quotation omitted) (cleaned up). "California recognizes alter ego liability where two conditions are met: First, where 'there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased;' and, second, where 'adherence to the fiction of the separate existence of the corporation would . . . sanction a fraud or promote injustice.'" *In re Schwarzkopf*, 626 F.3d 1032, 1038 (9th Cir. 2010) (quoting *Wood v.*

---

[2] Defendants argue that Delaware law should apply, *see* Mot. at 15–16, while Plaintiffs observe that the amended PPAs specify that California law "governs their enforcement," Opp. at 23. Both parties, however, concede that "[i]t ultimately does not matter which law applies because . . . the two states' alter ego tests are 'substantially' similar." Opp. at 23; Mot. at 15 ("Delaware and California apply 'substantially' similar tests, and Origis prevails under either."). Given this, the Court will apply California law, though it agrees that this choice does not change the outcome of this dispute. *See also Walsh v. Kindred Healthcare*, 798 F. Supp. 2d 1073, 1083 (N.D. Cal. 2011) (noting that Delaware and California laws were not materially different for alter ego analysis).

*Elling Corp.*, 20 Cal. 3d 353, 365 n.9 (1977)).

As for the first condition, unity of interest and ownership is a fact-intensive analysis that requires the Court to:

> [C]onsider numerous factors, including inadequate capitalization, commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, use of one as a mere conduit for the affairs of the other, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers.

*Virtualmagic Asia, Inc. v. Fil-Cartoons, Inc.*, 99 Cal. App. 4th 228, 245 (2002). "No single factor is determinative, and instead a court must examine all the circumstances to determine whether to apply the doctrine." *Id.*

Here, Plaintiffs allege that:

> a. There is such a unity of interest and ownership between Origis and SLW that their separate personalities no longer exist. There is no SLW distinct from Origis. SLW's personnel, finances, management, and operations are controlled and conducted by Origis, and Origis has intentionally underfunded SLW in order to leave SLW unable to meet its obligations or compensate its counterparties for its breaches of contract.
>
> b. Specifically, based on the CCAs' interactions with SLW to date, it appears that SLW has no employees of its own and that Origis personnel are the ones executing all of SLW's functions. Origis executives were the signatories to the 2023 Amended PPAs and Settlement Agreements. The Amended PPAs direct all notices and invoices to Origis personnel at Origis's headquarters.
>
> c. Even Origis employees and executives appear to recognize that Origis and SLW are one and the same. In emails and correspondence, including those described in the allegations above, Origis representatives have consistently referred to "Origis" when referencing steps taken on the SLW project, including as to contracting and permitting efforts. For example, in Origis employee John Deese's email in mid-November 2024 responding to 3CE's inquiry about tariffs, Mr. Deese said that "Origis has agreements in place for the major equipment [needed] for SLW[."] Origis likewise holds itself out on its website as being the entity that serves 3CE and SVCE.

Compl. ¶ 102 (emphasis omitted).

Plaintiffs' allegations are too conclusory to establish unity of interest. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a

plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements" of a legal theory "will not do." *Twombly*, 550 U.S. at 555; *see also Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1040 (N.D. Cal. 2014) ("Conclusory allegations of 'alter ego' status are insufficient to state a claim." (quotation omitted)). Yet most of Plaintiffs' allegations simply restate the factors for alter ego status and lack any factual support. Courts have rejected similar conclusory allegations. *See, e.g.*, *KEMA, Inc. v. Koperwhats*, No. C-09-1587 MMC, 2010 WL 3464737, at *8–*9 (N.D. Cal. Sept. 1, 2010) (rejecting conclusory allegations that a party "commingled funds and assets," "took over and controls, directs and approves the operations and employs former personnel of [another party]," and acted as a "mere shell or conduit" for another); *Smith v. Lanza*, No. 21-CV-08785-JST, 2022 WL 20243472, at *3 (N.D. Cal. Apr. 18, 2022) ("Smith also presents a potpourri of boilerplate alter ego allegations, such as that there were 'commingling funds and/or assets of the entities,' 'having common equitable ownership of the entities,' or 'concealing or misrepresenting the ownership, management and financial interests associated with the entities.'").

Plaintiffs make five factual allegations that could support their claims: (1) "SLW has no employees of its own and . . . Origis personnel are the ones executing all of SLW's functions"; (2) "Origis executives were the signatories to the 2023 Amended PPAs and Settlement Agreements"; (3) "[t]he Amended PPAs direct all notices and invoices to Origis personnel at Origis's headquarters"; (4) "[i]n emails and correspondence, . . . Origis representatives have consistently referred to 'Origis' when referencing steps taken on the SLW project, including as to contracting and permitting efforts," such as "in Origis employee John Deese's email in mid-November 2024 responding to 3CE's inquiry about tariffs, [where] Mr. Deese said that 'Origis has agreements in place for the major equipment [needed] for SLW'"; and (5) "Origis . . . holds itself out on its website as being the entity that serves 3CE and SVCE." Compl. ¶ 102 (emphasis omitted).

These allegations aren't sufficient, either. Facts (1) through (3) plausibly suggest that Defendants "use[d] the same offices and employees." *Virtualmagic*, 99 Cal. App. 4th at 245. Fact (4) suggests that Defendants operated for the benefit of each other and took some joint actions. But as Defendants note, Mot. at 18, "[t]otal ownership and shared management personnel are

alone insufficient to establish the requisite level of control." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015); *see also Doe v. Unocal Corp.*, 248 F.3d 915, 927 (9th Cir. 2001) ("A parent corporation may be directly involved in financing and macro-management of its subsidiaries . . . without exposing itself to a charge that each subsidiary is merely its alter ego."). Similarly, while Fact (5) might support an inference of the "holding out by one entity that it is liable for the debts of the other," *Virtualmagic*, 99 Cal. App. 4th at 245, "courts recognize that separate corporate entities presenting themselves as one online does not rise to the level of unity of interest required to show companies are alter egos," *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 984 (N.D. Cal. 2016).

Plaintiffs argue that they have also pleaded that Origis intentionally undercapitalized SLW. Opp. at 26. Plaintiffs plead that "Origis has intentionally underfunded SLW in order to leave SLW unable to meet its obligations or compensate its counterparties for its breaches of contract." Compl. ¶ 102(a); *see also id.* ¶¶ 5, 9 (referring to SLW as "a shell entity that [Origis] intentionally underfunded"). Plaintiffs further assert that "on information and belief, Origis has left SLW undercapitalized and unable to cover even a portion of the damages for which it might be liable." *Id.* ¶ 102(d). Defendants argue that "[u]se of an undercapitalization label alone is too conclusory to proceed." Reply at 11.

Once more, the Court finds that Plaintiffs fail to adequately allege facts showing that Origis intentionally undercapitalized SLW. "[I]nadequate capitalization alone can serve as a basis for alter ego liability against a parent corporation." *Successor Agency to Former Emeryville Redevelopment Agency v. Swagelok Co.*, 364 F. Supp. 3d 1061, 1080 (N.D. Cal. 2019). And while allegations made on information and belief can be sufficient to show unity of interest, they cannot simply "mimic[] the language of the factors" and must supply some specific factual basis. *See Stewart*, 81 F. Supp. 3d at 962; *Sandoval*, 34 F. Supp. 3d at 1040 (rejecting alter ego claim where "Plaintiffs' allegations 'on information and belief' about a unity of interest between all Defendants [were] conclusory"). Here, Plaintiffs assert in a conclusory fashion that Origis intentionally undercapitalized SLW. Courts have rejected similar language. *See, e.g.*, *Epicrew Corp. v. Cap. Asset Exch. & Trading, LLC*, No. 24-CV-03676-EJD, 2026 WL 323415, at *3 (N.D. Cal. Feb. 6,

2026) (discussing allegations that defendants "intentionally undercapitalized [an entity] to perpetrate fraud" and finding that "Plaintiff offers neither facts to support these allegations nor even facts on which their belief in these allegations is based").[3]

In short, even taking Plaintiffs' factual allegations as true and making all reasonable inferences in their favor, the Court is unconvinced that Plaintiffs have alleged the kind of unity of interest that suggests SLW is the "mere instrumentality" of Origis. *Ranza*, 793 F.3d at 1073 (quotation omitted); *cf. Payoda, Inc. v. Photon Infotech, Inc.*, No. 14-CV-04103-BLF, 2015 WL 4593911, at *3 (N.D. Cal. July 30, 2015) (finding conclusory language and allegations of shared common leadership, shared office space, and joint treatment of parties on website to be insufficient); *MLC Intel. Prop., LLC v. Micron Tech., Inc.*, No. 19-CV-03345-EMC, 2019 WL 4963253, at *12–*13 (N.D. Cal. Oct. 8, 2019) (rejecting even more specific unity of interest allegations where nothing suggested that the parent was "exercising pervasive control over the subsidiaries").[4] Because Plaintiffs have not shown unity of interest, Counts 1 and 6 are **DISMISSED** as to Defendant Origis with leave to amend. *See Reynolds v. Binance Holdings Ltd.*, 481 F. Supp. 3d 997, 1008 (N.D. Cal. 2020) ("Where a plaintiff fails to satisfy the 'unity of interest' prong, a court need not analyze the 'fraud or injustice prong.'").

**B. Rule 9(b) (Counts 2–7)**

Plaintiffs allege a "calculated scheme to defraud SVCE and 3CE," where "Origis falsely promised that higher prices and a delayed schedule would address the market conditions,

---

[3] Defendants argue that Rule 9(b) should apply to Plaintiffs' alter-ego theory. Mot. at 16. The Court does not reach this issue, as it is clear that Plaintiffs have not satisfied their normal burden. If the parties raise this issue again, they should more clearly explain why Rule 9(b) should or shouldn't apply and what that practically means for the pleading requirements here. *See Wimbledon Fund, SPC v. Graybox, LLC*, No. CV15-6633-CAS(AJWX), 2016 WL 7444709, at *5 (C.D. Cal. Aug. 31, 2016) (noting disagreement in this circuit).

[4] Many of Plaintiffs' cases are distinguishable in that they credited detailed factual allegations going to a greater number of the relevant factors. *See, e.g.*, *FTC - Forward Threat Control, LLC v. Dominion Harbor Enters., LLC*, No. 5:19-CV-06590-EJD, 2020 WL 5545156, at *10–*11 (N.D. Cal. Sept. 16, 2020) (discussing several clear factual allegations supporting unity of interest, including the fact that one entity kept the financial and license agreement records of another, and the fact that the subsidiary was not capitalized at the time of its formation); *United States ex rel. Ginger v. Ensign Grp., Inc.*, No. 8:15-CV-00389-JWH-DFMX, 2022 WL 4110166, at *5–*6 (C.D. Cal. Mar. 10, 2022) (discussing numerous factual allegations, including allegations that one entity siphoned funds from another).

permitting problems, and other issues Origis claimed were impacting the project and ensure completion under the new terms of the contract," despite "never intend[ing] to deliver on its promises." Compl. ¶¶ 1, 4–5. Even after Plaintiffs agreed to amended terms, Defendants allegedly "continued to falsely assure [Plaintiffs] . . . that the project was on track." *Id.* ¶ 7. Defendants argue that Plaintiffs have not met their Rule 9(b) obligations in alleging with particularity (1) falsity; (2) "who" did or said "what"; and (3) intent not to perform any promises. Mot. at 21–27.

*i. Legal Standard*

When fraud is an essential element of a claim, Rule 9(b) imposes a heightened pleading standard. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *see also Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). A plaintiff must identify "the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018) (quotation omitted). The allegations "must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *In re Facebook, Inc. Sec. Litig.*, 87 F.4th 934, 947 (9th Cir. 2023) (quotation omitted). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

*ii. Applicability of Rule 9(b)*

As a preliminary matter, the parties dispute whether Rule 9(b) applies to Counts 2 (intentional interference with contractual relations), 6 (breach of implied covenant of good faith and fair dealing), and 7 (violation of UCL). *Compare* Mot. at 20–21, *with* Opp. at 16 n.2 (arguing that fraud is not an essential element of these claims). "In cases where fraud is not a necessary element of a claim, a plaintiff may choose nonetheless to allege in the complaint that the defendant has engaged in fraudulent conduct." *Vess*, 317 F.3d at 1103. Where a plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a

claim[,] . . . the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Id.* at 1103–04. But where a plaintiff "allege[s] some fraudulent and some non-fraudulent conduct[,] . . . only the allegations of fraud are subject to Rule 9(b)'s heightened pleading requirements." *Id.* at 1104.

Here, Plaintiffs' core theory "sounds in fraud," and Plaintiffs do not clearly identify any allegations of non-fraudulent conduct in their opposition. Notably, the first paragraph of Plaintiffs' complaint makes clear that "[a]t its core, this case is about Origis's greed and its calculated scheme to defraud SVCE and 3CE." Compl. ¶ 1. Counts 2, 6, and 7 also all reference the same underlying fraudulent scheme. *Id.* ¶¶ 111 (alleging that Origis interfered with SLW's contracts "as part of its malicious and wrongful scheme to try and force the CCAs to renegotiate the price terms and project schedule"), 142 (discussing Defendants' use of their failure to move the project forward to extort higher prices), 145–47 (discussing willful deception, misleading consumers, and fraudulent conduct).

However, some of the allegations in Plaintiffs' intentional interference and breach of implied covenant claims plausibly detail non-fraudulent conduct, at least in part. For example, Plaintiffs allege that Origis "orchestrated SLW's refusal to pay Adjustment Payment #1, . . . failure to provide a Remedial Action Plan, and refusal to provide required information and assurances." *Id.* ¶ 111 (intentional interference). Similarly, Plaintiffs allege that Defendants "repeatedly threaten[ed] to abandon the project if the CCAs did not acquiesce to Defendants' multiple rounds of extortionate price demands." *Id.* ¶ 142 (breach of implied covenant).[5] Accordingly, the Court will apply Rule 9(b) to each of Plaintiffs' claims, except to the extent the intentional interference and breach of implied covenant claims allege non-fraudulent conduct.[6]

---

[5] If Plaintiffs subsequently argue that Rule 9(b) does not apply, they should more clearly explain which allegations are not based on a claim of fraud, as much of this conduct is bound up in the allegedly fraudulent scheme.

[6] Plaintiffs do not appear to dispute that Rule 9(b) applies to Counts 3 (promissory estoppel), 4 (intentional misrepresentation), and 5 (negligent misrepresentation). *See* Opp. at 16 n.2. The Court readily concludes that these claims sound in fraud as pleaded, and Rule 9(b) applies. *See, e.g.*, *LeGrand v. Abbott Lab'ys*, 655 F. Supp. 3d 871, 895 (N.D. Cal. 2023) (applying Rule 9(b) to intentional and negligent misrepresentation); Compl. ¶¶ 114–24 (alleging misrepresentations as the basis for the promissory estoppel claim).

*iii. Allegations of Falsity*

Defendants argue that Plaintiffs have failed to identify what is false or misleading about the purportedly fraudulent statements and why they are false. Mot. at 21. They explain that "all claims of misrepresentation on the project's progress and viability fall into two groups: (1) predictions about future events . . . ; and (2) statements about the current contracts, control, or progress." *Id.* at 22 (emphasis omitted). Defendants argue that the former are non-actionable, since "incorrect predictions about future performance, future economics, or even the policies of future presidents are not actionable, unless the [Plaintiffs] can further allege misrepresentations about existing facts." *Id.* (emphasis omitted). They also argue that "[i]n the only instances where the [Plaintiffs] attempt to describe misrepresentation of existing facts, they fail to describe with any particularity why the statement was false." *Id.*

Plaintiffs identify five particularized sets of statements that they claim satisfy Rule 9(b) and "allege exactly what was misleading and false about Defendants' statements regarding the one-time nature of renegotiating the PPAs, Origis's plans and efforts to complete the SLW project, and Defendants' ability to complete the project on the Amended PPAs' terms." Opp. at 14–18.[7]

Part of Plaintiffs' fraud claim is clearly pleaded with the necessary particularity. Plaintiffs allege that "[a]fter the parties entered into the Amended PPAs [in November 2023], Origis continued to mislead the CCAs by misrepresenting the project's progress." Compl. ¶¶ 121, 133. Specifically, Plaintiffs point to a mid-November 2024 email where Origis representative John Deese, responding to questions from Plaintiff 3CE "about the anticipated impact of the election results" and "potential tariffs," falsely assured 3CE that "we are covered!" and "Origis has agreements in place for the major equipment for SLW – [Battery Energy Storage System ("BESS")], solar, racking, GSU, etc." *Id.* ¶ 70. They note that "in April 2025, Origis began claiming that '[t]he primary challenge has been the BESS pricing and evolving tariff landscape,'"

[7] Plaintiffs identify a sixth statement where Origis conveyed to others that "fixed prices don't work in the current market," but Plaintiffs do not suggest that this statement itself was a misrepresentation. *See* Opp. at 15 (quoting Compl. ¶ 54). Rather, Plaintiffs claim that this is contradictory evidence suggesting prior statements were false. *See id.* As a result, this cannot satisfy Rule 9(b) on its own, though the Court considers it below when determining whether Plaintiffs' allegations are adequately pleaded.

which "ran contrary to the post-election email" where "the very same Origis representative represented that the SLW project was 'covered' as to tariffs because 'Origis has agreements in place for the major equipment for SLW . . . [including] BESS.'" *Id.* ¶ 76.

Plaintiffs have identified the who (John Deese to Deanna of 3CE),[8] what (representations about BESS agreements already being in place and "we are covered!"), when (mid-November 2024), and where (via email). Plaintiffs have also adequately explained how these statements were false (by falsely suggesting that Origis had the necessary agreements in place for BESS and was covered from tariff risks). And Plaintiffs have provided an adequate factual basis from which the Court can infer that these representations were false at the time they were made, including allegations that (1) "[j]ust days after providing these assurances, . . . Origis informed the CCAs that the SLW project was further delayed and, in Origis's view, no longer financially viable"; (2) Origis provided "shifting excuses for the delays," initially identifying permitting delays as the roadblock on November 18, 2024, and then citing "interest rates, inflation, financing, and other problems as the principal obstacles" in February 2025; and (3) John Deese contradicted his prior assertions in April 2025 and "began claiming that '[t]he primary challenge has been the BESS pricing and evolving tariff landscape.'" *Id.* ¶¶ 70–76. These allegations are sufficient to "give [Defendants] ample notice of [Plaintiffs' theory], and to give [the Court] some assurance that the theory has a basis in fact." *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 989–90 (9th Cir. 2008).

But Plaintiffs also have what appears to be a second, distinct theory of fraud, and the adequacy of that theory is a much closer call. Plaintiffs allege that "beginning in June 2022 and continuing throughout the parties' agreement to the Amended PPAs in November 2023, Origis repeatedly represented to the CCAs that Origis's demands for a new, significantly higher fixed

---

[8] Defendants argue that Rule 9(b) requires Plaintiffs to specify the recipients of each alleged misrepresentation. Mot. at 25–26. Defendants do not identify binding authority so holding, and the Court is not persuaded that this is a strict requirement: "Because th[e Rule 9(b)] standard does not require absolute particularity or a recital of the evidence[,] a complaint need not allege a precise time frame, describe in detail a single specific transaction or identify the precise method used to carry out the fraud." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (quotations omitted) (cleaned up). Nevertheless, this allegation does identify a recipient.

price and extended project timeline would ensure that the SLW project would be complete on the new timeline despite issues that Origis said were plaguing the project." Compl. ¶¶ 115, 126. Apparently, "Origis knew that it would not follow through on these commitments" and "never disclosed that it was failing to take necessary steps to keep the project on track" despite "represent[ing] that such procurement was in fact taking place." *Id.* ¶¶ 116–17, 127–28.

The Court cannot identify where Plaintiffs explain when or how Defendants "repeatedly represented" that the extended project timeline would "ensure" completion of the SLW project on the new timeline, and the alleged "misrepresentations" that Plaintiffs identify do not provide the supporting factual basis that Plaintiffs claim they do. For example, Plaintiffs allege that Origis representative Ryan Pumford told Plaintiffs on June 23, 2022, that "they had waited to reach out to [Plaintiffs] about [the initial issues necessitating the first amended terms] because 'we wanted to let the dust settle a bit to limit any additional requests going forward.'" *Id.* ¶ 44. Plaintiffs suggest that this was a "false assurance[] by Origis that this price renegotiation was a one-time occurrence and that the project would be completed according to satisfactory amended terms," *id.*, but that is not what the statement says: Mr. Pumford said they wanted to *limit* any additional requests going forward. And Plaintiffs provide no factual basis for the Court to reasonably infer that Mr. Pumford knew his "statement was false when made." *T & M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*, 83 F. Supp. 3d 855, 879 (N.D. Cal. 2015). Likewise, Plaintiffs identify a September 5, 2023 email where Origis representative Tanya Sessions indicated that Origis expected to be able to achieve commercial operation six months before the December 2025 guaranteed commercial operation date. Compl. ¶ 59. Again, Plaintiffs do not explain what was false about this forward-looking prediction at the time it was made or plead any basis for an inference that Defendants did not believe the truth of the statement, instead simply pointing to the fact that they were later not able to meet this deadline.

Similarly, the Court cannot identify when (prior to signing the amended PPAs) Defendants failed to "disclose[] that [they were] failing to take necessary steps to keep the project on track" despite "represent[ing] that such procurement was in fact taking place." *See id.* ¶¶ 117, 128. For example, Plaintiffs generally allege that "throughout 2023," Origis misrepresented "that it was

moving the project forward in a way that would enable Origis to complete the SLW Project as promised, including by claiming it had secured the necessary equipment to do so, had secured all easements and land purchases necessary for site control, and that it expected to complete the project on the new timeline and at the new price points that would soon be memorialized in the new PPAs." *Id.* ¶ 58. This allegation does not outline the contours of the fraudulent scheme with the necessary particularity, and absent a factual basis for these claims, it amounts to a "conclusory, unwarranted deduction[] of fact." *See In re Gilead Scis. Sec. Litig.*, 536 F.3d at 1055.

In an effort to provide the necessary particularity and factual basis, Plaintiffs emphasize that Origis representatives Johan Vanhee, Josh Teigiser, and Ryan Pumford gave a presentation titled "The Perfect Storm 2.0," where they attempted to justify needing to amend the PPAs. Compl. ¶ 47. During that presentation, they explained that demand for solar was being pushed to "unprecedented heights," while supply remained constrained due to supply chain issues, trade policy, and other factors. *Id.* ¶ 48. Plaintiffs allege that, during that presentation, the Origis representatives misrepresented that "it was uniquely well positioned to complete the SLW project despite the changing market conditions" when they said it (1) "had strategic relationships with U.S.-based suppliers, and those not impacted by tariffs"; (2) had "strong relationships with domestic manufacturers [that] would allow for competitive pricing"; and (3) could "secure non-impacted 2024-2025 solar product for its customers at firm pricing." *Id.* ¶ 52 (cleaned up). The representatives also allegedly stated that "such procurement would need to occur ASAP." *Id.* (cleaned up).

As before, Plaintiffs claim that they "reasonably understood the Perfect Storm 2.0 presentation, and the representations by the Origis representatives who gave the presentation, as promises that Origis could and would overcome the many hurdles outlined in the presentation and complete the project, if given the significant additional time and money it was requesting." *Id.* ¶ 53. Plaintiffs also allege that "despite expressly stating in its Perfect Storm 2.0 presentation that it was 'essential to move quickly to secure equipment,' Origis did not do so." *Id.* ¶ 55. But once more, Plaintiffs do not identify what equipment was not secured or why these statements were false at the time they were made.

These statements highlight the disconnect between Plaintiffs' claimed explanation for falsity under Rule 9(b) and the supporting factual basis for reasonably inferring that falsity. In these instances, Plaintiffs' factual allegations are "consistent with both their theory of liability and [Defendants'] innocent alternative" that the real cause of the alleged breach was a shifting administrative landscape, and they do not provide "sufficient factual enhancement to cross the line between possibility and plausibility." *See Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995, 998–99 (9th Cir. 2014) (quotation omitted); Compl. ¶ 70 (noting Donald Trump was elected president on a "staunchly pro-tariff, anti-renewable energy platform" in November 2024).

Finally, Plaintiffs allege that these statements were false because "it is now clear that Origis knew that it would not follow through on its promises." Compl. ¶ 54. "While a misrepresentation is generally only actionable if the misrepresentation concerns past or existing material facts, . . . a promise to do something in the future may constitute intentional misrepresentation if it was made without any intention to perform . . . ." *R Power Biofuels, LLC v. Chemex LLC*, No. 16-CV-00716-LHK, 2016 WL 6663002, at *11 (N.D. Cal. Nov. 11, 2016). "While intent . . . may be alleged generally under Rule 9(b), the element of falsity requires the plaintiff to point to facts which show the statement was false at the time it was made," and conclusory allegations about a "secret intent" and the failure to perform the promise are insufficient. *RHUB Commc'ns, Inc. v. Karon*, No. 16-CV-06669-BLF, 2017 WL 3382339, at *10 (N.D. Cal. Aug. 7, 2017) (emphasis omitted); *Tenzer v. Superscope, Inc.*, 39 Cal. 3d 18, 30 (1985) ("[S]omething more than nonperformance is required to prove the defendant's intent not to perform his promise." (quotation omitted)).

Here, Plaintiffs barely plead a sufficient factual basis for the Court to reasonably infer that Defendants did not intend to "secure non-impacted 2024-2025 solar product for its customers at firm pricing," Compl. ¶ 52, or follow through on their promises in the amended PPAs. Plaintiffs claim that they "allege[] a detailed chronology . . . and post-amendment breaches." Opp. at 23. While the Court agrees with Defendants that it is not clear why a detailed chronology is any different from more specific allegations of non-performance, the fact that Defendants later

attempted to renegotiate the terms for higher prices a second time using similar excuses puts this case on a different footing than those involving typical allegations of non-performance, and this fact supports an inference that Defendants never intended to perform their promises. Additionally, Plaintiffs allege that "at the same time that Origis was negotiating a new, higher fixed price that it represented would enable the SLW project to get built, Mr. Vanhee was conveying to others that fixed prices don't work in the current market." Compl. ¶ 54. Plaintiffs can adequately plead "what is false or misleading about a statement, and why it is false . . . by pointing to inconsistent contemporaneous statements or information . . . which were made by or available to the [D]efendants." *Rubke v. Cap. Bancorp Ltd.* 551 F.3d 1156, 1161 (9th Cir. 2009) (quotation omitted).

Defendants argue that Plaintiffs do not adequately explain how "statements about the market generally . . . would be contradicted by a view about the project that did not track market trends, or a decision to shift a fixed price." Reply at 18 (emphasis omitted). In isolation, the Court would probably agree. But the combination of Mr. Vanhee's contemporaneous comment, the dual requests for amendment, the eventual non-performance, and the allegation that Defendants later misrepresented similar rosy assurances about the BESS agreements and coverage from tariff risks is "sufficient factual enhancement to cross the line between possibility and plausibility." *See Eclectic Props.*, 751 F.3d at 995.[9] [10]

---

[9] The Court gives minimal credit to Plaintiffs' allegation that "Origis was touting its 'growth ambitions' amidst 'a time of unprecedented demand for clean electricity' at the same time it insisted the CCAs had to renegotiate because the SLW project was supposedly uneconomic." Opp. at 22 (quoting Compl. ¶ 7). The fact that Origis publicly advertised optimism about a new investment says little about the state of or intent behind this particular project.

[10] Plaintiffs point to "a pattern" of similar behavior, alleging that "[o]n information and belief, Origis repeatedly secured contracts with other utilities by offering competitive price points in their initial bid, knowing that the public and regulatory constraints on their project partners would put pressure on those partners to later negotiate contacts to their detriment." Compl. ¶ 10; *see also id.* ¶ 89. As Defendants correctly note, Mot. at 27, there is no factual basis supporting this allegation. Plaintiffs argue that "[w]ith matters exclusively within the opposing party's knowledge, Rule 9(b)'s particularity requirement is satisfied so long as allegations made 'on information and belief' state the facts upon which such information and belief is founded." Opp. at 22 n.7. This cuts against Plaintiffs' argument, as they have not stated the facts upon which such information and belief is founded. Plaintiffs concede that they can amend their complaint to plead "the specific instances [they have] located in the public record suggesting Origis's pattern of non-performance," which undercuts any claim that this "is a matter exclusively within Origis's knowledge." *See id.*

The Court concludes these allegations sufficiently "give notice to defendants of the specific fraudulent conduct against which they must defend" and preliminarily assure the Court that these allegations are grounded in an adequate factual basis. *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001). Rule 9(b) "does not require absolute particularity or a recital of the evidence," *United Healthcare Ins.*, 848 F.3d at 1180 (quotation omitted), and the details that have been provided adequately ensure that "the [Defendants] can prepare an adequate answer from the allegations," *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). This does not mean that Plaintiffs' theory of fraud will prevail at a later stage, but it is enough to survive a motion to dismiss.

Even if this were not the case, many courts in this circuit have concluded that "Rule 12(b)(6) doesn't permit piecemeal dismissals of *parts* of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief." *Adjaye v. Cook*, No. 23-CV-01234-AGT, 2024 WL 647636, at *3 (N.D. Cal. Feb. 15, 2024) (quotation omitted) (emphasis in original); *see also Pinnacle Ventures LLC v. Bertelsmann Educ. Servs. LLC*, No. 18-CV-03412-BLF, 2019 WL 4040070, at *3–*4 (N.D. Cal. Aug. 26, 2019); *Doe v. Napa Valley Unified Sch. Dist.*, No. 17-CV-03753-SK, 2018 WL 4859978, at *2–*3 (N.D. Cal. Apr. 24, 2018). Some courts have explained that "Rule 12(b)(6) is different in this regard from Rule 56, which expressly permits a party to move for summary judgment in its favor as to a 'part of [a] claim.'" *Benyamin v. Topgolf Payroll Servs., LLC*, No. 2:23-CV-00303-DAD-SCR, 2025 WL 745827, at *4 n.4 (E.D. Cal. Mar. 6, 2025) (quoting Fed. R. Civ. P. 56(a)). The Ninth Circuit has not ruled on this issue.

On one hand, this case is arguably distinct, as Plaintiffs allege two theories of fraud that are seemingly separable: they deal with different misstatements made over different periods of time, and they allege different theories of reliance. *See* Compl. ¶¶ 114–24. While "generally speaking, when a plaintiff makes two different arguments in support of one basis for relief, the

---

Plaintiffs must include those allegations now, rather than asserting vague claims that leave the Court and Defendants guessing at what specifically they are referring to. To the extent Plaintiffs intend to rely on this theory, they must include factual allegations supporting it in an amended complaint.

plaintiff is not bringing two separate claims," *Quinto-Collins v. City of Antioch*, No. 21-CV-06094-VC, 2022 WL 18574, at *2 (N.D. Cal. Jan. 3, 2022), these theories could arguably be broken up into multiple distinct causes of action for fraud. On the other hand, the parties have not briefed this issue or explained what the Court should do if it finds one portion of the claim adequately pleaded and one portion inadequately pleaded. And while the Court has discussed these as two distinct theories of fraud, neither party clearly treated them as such in their briefing (though Defendants do mention distinct theories of reliance, *see* Reply at 15). Given that (1) this issue was not presented to the Court; and (2) what appears to be a majority of district courts has concluded that Rule 12(b)(6) cannot be used to dismiss pieces of an otherwise adequately pleaded claim, the Court concludes that the best path forward is to decline to dismiss only a portion of Plaintiffs' fraud-based claims. Accordingly, the Court **DENIES** Defendants' motion to dismiss for failure to plead falsity.[11] Nevertheless, if Plaintiffs intend to pursue the pre-amendment fraud theory, they should include additional factual support for it if they choose to amend the complaint.

*iv. Specifying Corporate Defendants*

Defendants argue that Plaintiffs have impermissibly lumped allegations against the two Defendants together. Mot. at 23–24. "Rule 9(b) does not allow a complaint to merely lump multiple defendants together," and Plaintiffs must "differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) (quotation omitted). In fraud claims, "a plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme." *Id.* at 765 (quotation omitted) (cleaned up).

Plaintiffs argue that "this is a case where Origis and SLW are so intertwined that they are alter egos, and thus indistinguishable," and "[a]ny grouping of Origis and SLW in the Complaint is therefore a function of the relationship between Origis and SLW rather than a pleading failure." Opp. at 20. Plaintiffs distinguish Defendants' cited cases by arguing that "the Complaint here

[11] As the discussion above should make clear, these allegations of falsity also adequately plead the who, what, when, where, and how of the allegedly fraudulent scheme, and Defendants' motion is also **DENIED** on this ground.

identifies Origis and SLW by name, adequately pleads facts to establish the relationship between the two entities, and . . . pleads facts sufficient to establish that SLW is the alter ego of Origis." *Id.*

The Court generally agrees with Plaintiffs. The particularized allegations discussed above all relate to statements made by Origis representatives, but Counts 3, 4, and 5 are all brought against Origis only. *See* Compl. ¶¶ 114–39. Admittedly, Count 7 addresses both Defendants generically. *See id.* ¶¶ 144–50. But there is "no absolute requirement that . . . the complaint must identify false statements made by each and every defendant," *Swartz*, 476 F.3d at 764 (emphasis omitted), and "[t]here is no flaw in pleading . . . where collective allegations are used to describe the actions of multiple defendants who are alleged to have engaged in precisely the same conduct," *United Healthcare Ins.*, 848 F.3d at 1184. Here, even in the alternative where Origis is not the alter ego of SLW, Plaintiffs have alleged that Origis and SLW worked jointly on "a scheme to extort higher prices from the CCAs," Compl. ¶ 2, and these allegations are enough. *Cf. Sussex Fin. Enters., Inc. v. Bayerische Hypo-und Vereinsbank AG*, No. 08-4791 SC, 2010 WL 94272, at *3 (N.D. Cal. Jan. 6, 2010) (finding collective allegations against "three related corporate entities . . . sufficiently detailed to put each Defendant on notice of the claims against them"); *Brown v. Dynamic Pet Prods. & Frick's Meat Prods., Inc.*, No. 17-CV-0659-WQH-DHB, 2017 WL 4680125, at *3 (S.D. Cal. Oct. 18, 2017) (finding allegations that defendants "worked in concert as parent and subsidiary" adequate).

Similarly, and to the extent Rule 9(b) applies to Counts 2 and 6, Plaintiffs adequately attribute specific conduct to both Defendants. Plaintiffs allege that "SLW, and Origis as its alter ego . . . fail[ed] to use good faith efforts to move the project forward and to insulate it from changing market conditions and . . . threaten[ed] to abandon the project if the CCAs did not acquiesce to Defendants' multiple rounds of extortionate price demands." Compl. ¶ 142. Plaintiffs identify several specific allegations against both Defendants. *See, e.g.*, *id.* ¶ 87 ("Origis and SLW have refused to remedy SLW's breaches of its obligations under the Amended PPAs [and] continue to persist in their extortionate price demands."). For the intentional interference claim, Plaintiffs similarly allege that Origis "directed SLW not to perform unless the CCAs agreed

to further price increases and schedule changes." *Id.* ¶ 111. In both cases, the challenged conduct is sufficiently clear as to each Defendant at this stage. As a result, the Court **DENIES** the motion on this ground.

**C. Remaining Fraud Claims (Counts 3–5, 7)**

Defendants argue that Plaintiffs have not adequately pleaded actual or reasonable reliance. Mot. at 27–30. But Defendants' arguments are all directed towards Plaintiffs' allegations that they agreed to the amended PPAs and settlement agreements (and did not seek out other energy sources) in reliance on Defendants' pre-amendment misrepresentations. Defendants do not address Plaintiffs' theory that Plaintiffs relied on the alleged post-amendment misrepresentations "by continuing to rely on the SLW project to meet its resource adequacy, mid-term reliability, and other obligations." Compl. ¶ 122.[12] [13] The Court will not make these arguments on Defendants' behalf. Accordingly, the Court **DENIES** the motion on this ground.[14]

Defendants separately argue that Plaintiffs have not identified any actionable promises to support a promissory estoppel claim. Mot. at 30–32. They claim that the promise that the SLW project was covered in the face of prospective tariffs because "unspecified agreements [were] in place for the major equipment was by no means a specific promise." *Id.* at 31. But Plaintiffs allege that Origis stated it "ha[d] agreements in place for the major equipment for SLW – BESS, solar, racking, GSU, etc." such that the project was covered from tariff risks. Compl. ¶ 70. Origis' assurance that it had agreements in place for BESS is "definite enough that a court can determine the scope of the" promise. *Garcia v. World Sav., FSB*, 183 Cal. App. 4th 1031, 1045

---

[12] Defendants claim that Plaintiffs "no longer defend the claim that they supposedly relied on representations about the project's progress after November 2023." Reply at 15. But Plaintiffs cannot be faulted for failing to address an argument that was not raised.

[13] Defendants do suggest that the fact that Plaintiffs have not sought alternative energy sources now defeats past reliance. *See* Mot. at 30. But the fact that it may be more economical to pursue litigation now does not mean that Plaintiffs would not have sought alternatives in 2024 had they known the truth then.

[14] As the Court has already explained, the Court will not grant partial dismissal of a claim on a Rule 12(b)(6) motion. Accordingly, the Court need not address whether Plaintiffs have adequately alleged reasonable and actual reliance for their pre-amendment theory of fraud. But the Court also agrees with Plaintiffs that "[r]easonableness of reliance is ordinarily a question of fact." *Brown v. Van's Int'l Foods, Inc.*, 622 F. Supp. 3d 817, 827 (N.D. Cal. 2022).

(2010) (quotation omitted). Accordingly, the Court **DENIES** the motion on this ground.[15]

**D. Intentional Interference Claim (Count 2)**

Defendants argue that Plaintiffs have not adequately pleaded intentional acts designed to induce a breach, or that SLW would have performed on the contractual terms absent interference from Origis. Mot. at 33. Plaintiffs allege that Origis "directed SLW not to perform unless the CCAs agreed to further price increases and schedule changes" and "orchestrated SLW's refusal to pay Adjustment Payment #1, failure to commence construction by the Guaranteed Construction Start Date, failure to provide a Remedial Action Plan, and refusal to provide required information and assurances." Compl. ¶ 111; *see also id.* ¶¶ 80–90. Plaintiffs also allege that "Origis's conduct caused SLW's breaches and disrupted the CCAs' contractual rights, proximately causing the damages described above." *Id.* ¶ 112.

On one hand, these allegations plausibly suggest that Origis committed "intentional acts designed to induce a breach or disruption of the contractual relationship." *United Nat. Maint., Inc. v. San Diego Convention Ctr., Inc.*, 766 F.3d 1002, 1006 (9th Cir. 2014) (quotation omitted). These are more than conclusory legal allegations, even if the allegations about "orchestrating" certain actions are somewhat vague.

On the other hand, Plaintiffs have not plausibly alleged that these actions induced the breach of contract or otherwise caused "resulting damage." *See id.* (quotation omitted).[16] In their opposition, Plaintiffs only argue that (1) "SLW's breaches occurred 'at Origis's direction' and were in furtherance of Origis's contemporaneous ultimatum" and thus "the breaches were not inevitable"; and (2) "[t]he complaint also alleges Origis repeatedly assured Plaintiffs throughout 2024 that the project was 'covered' and on track under the Amended PPAs . . . before abruptly orchestrating SLW's breaches." Opp. at 30. The first example is entirely conclusory and does not

---

[15] As above, the Court need not reach whether Plaintiffs have adequately alleged a definite promise for their pre-amendment theory.

[16] Plaintiffs argue that they must only show that Origis' conduct was a substantial factor in causing the breach, not a but-for cause. Opp. at 30 n.12. The Court does not resolve this question here, because Plaintiffs' mix of conclusory and contradictory allegations would not satisfy either standard.

explain why the Court should infer that the breaches were not inevitable. And the second allegation notably cuts the other way. As discussed extensively above, Plaintiffs allege that Defendants' assurances throughout 2024 were false, suggesting that SLW *already* did not intend to perform before the apparent efforts to extract further price increases and schedule changes. *Cf. Stereoscope, LLC v. U.S. Bank Nat'l Ass'n*, 675 F. App'x 725, 726 (9th Cir. 2017) (non-precedential case dismissing where complaint alleged that the contractual relationship had "soured" months "before any of the alleged fraud or misconduct" by the third party occurred).[17] Because Plaintiffs' stated explanation for causation is contradictory to and otherwise unsupported by the complaint, the Court **DISMISSES** Count 2 with leave to amend.

## IV. MOTIONS TO SEAL

Before the Court are two motions to seal. Dkt Nos. 7, 26. The Court **GRANTS IN PART** and **DENIES IN PART** the motions.

### A. Legal Standard

Courts generally apply a "compelling reasons" standard when considering motions to seal documents. *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 677–78 (9th Cir. 2010) (quoting *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006)). "This standard derives from the common law right 'to inspect and copy public records and documents, including judicial records and documents.'" *Id.* (quoting *Kamakana*, 447 F.3d at 1178). A "strong presumption in favor of access is the starting point." *Kamakana*, 447 F.3d at 1178 (quotation omitted). To overcome this strong presumption, the moving party must "articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process." *Id.* at 1178–79 (citations, internal quotation marks, and alterations omitted).

Records attached to motions that are only "tangentially related to the underlying cause of

[17] It is of course possible that Origis interfered with SLW's construction progress throughout 2024 (and 2023), as well, such that these allegations are not inconsistent with causal interference. But that is seemingly not what the complaint (or the opposition) alleges. The complaint seems to focus on Origis' interference beginning in late 2024 starting with negotiations for higher prices and extending to a series of breaches throughout 2025. *See* Compl. ¶¶ 80–90, 111.

action" must meet the lower "good cause" standard of Rule 26(c) of the Federal Rules of Civil Procedure. *See Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1099 (9th Cir. 2016); *see also Kamakana*, 447 F.3d at 1179–80. The "good cause" standard requires a "particularized showing" that "specific prejudice or harm will result" if the information is disclosed. *Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002); *see also* Fed. R. Civ. P. 26(c). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning" will not suffice. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (quotation omitted).

Under the local rules, the party seeking to file a document or portions of it under seal also "must explore all reasonable alternatives to filing documents under seal, minimize the number of documents filed under seal, and avoid wherever possible sealing entire documents." Civil L.R. 79-5(a). The party must further explain the interests that warrant sealing, the injury that will result if sealing is denied, and why a less restrictive alternative to sealing is not sufficient. *See id.* 79-5(c). "Only in rare circumstances should a party seek to file portions of a pleading or brief under seal." *Id.* 79-5(e).

**B. Dkt. No. 7**

Defendants seek to seal portions of Plaintiffs' complaint, Dkt. No. 1-1, which was attached as an exhibit to their notice of removal. Plaintiffs' complaint was originally "lodged conditionally under seal in San Francisco County Superior Court." Dkt. No. 7 at 2. "Defendants' redactions are limited to certain paragraphs in the Complaint and are more narrowly tailored than the redactions Plaintiffs proposed in state court." *Id.* However, the state court has since denied Plaintiffs' motion to seal, and the complaint is now fully public. *See* Opp. at 11 n.1; Reply at 22 n.10; *Silicon Valley Clean Energy, et al. v. Origis USA LLC, et al.*, Case No. CGC25630124 (S.F. Superior Ct.) (docket entries dated October 10, 2025, and November 12, 2025). As a result, there are no compelling reasons to seal this document, and this motion is **DENIED**.

**C. Dkt. No. 26**

Defendants seek to seal excerpts of their motion to dismiss and six exhibits of the relevant PPAs and settlement agreements between Plaintiffs and Defendants. They argue that these

materials contain "commercially sensitive financial and business information in agreements between the Plaintiffs and [Defendant] SLW relating to the development of commercial solar energy projects," and "[d]isclosure of th[e]se terms could allow both buyers and sellers of energy development projects to adjust their own bid submissions, strategies, and negotiations." Dkt. No. 26 at 2–3; *see also* Dkt. No. 26-1 ¶ 5 (noting that "[e]ach set of agreements . . . contain strong confidentiality language extending to the terms and conditions of, and proposals and negotiations related to, the agreements"). Because the parties seek to seal documents related to Defendants' motion to dismiss that are more than "tangentially related to the merits of [the] case," the Court applies the "compelling reasons" standard. *See Ctr. for Auto Safety*, 809 F.3d at 1101.

The Court agrees that there are compelling reasons to seal the six agreements at issue and **GRANTS** the motion as to these exhibits. *See Baird v. BlackRock Institutional Tr. Co., N.A.*, 403 F. Supp. 3d 765, 792 (N.D. Cal. 2019) ("Courts have found that confidential business information in the form of license agreements, financial terms, details of confidential licensing negotiations, and business strategies satisfies the 'compelling reasons' standard." (quotation omitted)).[18]

However, several of the redacted portions in the motion to dismiss refer to details that are already publicly available in the state court complaint. There are no compelling reasons for redacting such details. As a result, the motion is **DENIED** as to Defendants' motion to dismiss. Defendants may renew their motion as to narrower proposed redactions.

## V. CONCLUSION

Defendants' motion to dismiss, Dkt. No. 25, is **GRANTED IN PART** and **DENIED IN PART**. Count 2 is **DISMISSED** with leave to amend. Counts 1 and 6 are **DISMISSED** as to Defendant Origis with leave to amend. Any amended complaint must be filed within 21 days of the date of this order, and may not add any new claims or defendants.

The Court **GRANTS IN PART** and **DENIES IN PART** Dkt. No. 26. The Court

[18] It is notable that the Court did not rely on these exhibits in this order, and thus "the public interest in access to this information is minimal." *See Lesnik v. Eisenmann SE*, No. 16-CV-01120-LHK, 2021 WL 2093062, at *2 (N.D. Cal. Feb. 12, 2021). However, these contractual exhibits are likely to be relevant to the merits of this dispute at a later stage, and the Court might not seal these documents when they are included in future motions. The parties should propose narrower redactions for these exhibits if they attach them to subsequent motions.

United States District Court
Northern District of California

**DENIES** Dkt. No. 7. Pursuant to Civil L.R. 79-5(g), any documents for which the motions to seal have been granted will remain under seal. Defendants must file an unredacted version of the complaint within 7 days of this order. Defendants also must file within 7 days of this order either (1) a public version of their motion to dismiss; or (2) a renewed motion to seal narrower portions of their motion to dismiss.

The Court further **SETS** a case management conference on September 15, 2026, at 2:00 p.m. The hearing will be held by Public Zoom Webinar. All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/hsg. All attorneys and pro se litigants appearing for the case management conference are required to join at least 15 minutes before the hearing to check in with the courtroom deputy and test internet, video, and audio capabilities. The parties are further **DIRECTED** to file a joint case management statement by September 8, 2026.

**IT IS SO ORDERED.**

Dated: 8/13/2026

Haywood S. Gilliam, Jr.

HAYWOOD S. GILLIAM, JR.
United States District Judge